Ethan J. Brown (SBN 218814)
 *ethan@bnsklaw.com*
Jill R. Glennon (SBN 204506)
 *jill@bnsklaw.com*
BROWN NERI SMITH & KHAN LLP
11766 Wilshire Boulevard, Suite 1670
Los Angeles, California 90025
Telephone:  (310) 593-9890
Facsimile:   (310) 593-9980

*Attorneys for Plaintiff*
Luma Pictures, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LUMA PICTURES INC., a California corporation,<br><br>      Plaintiff,<br><br>           v.<br><br>JONATHAN BETUEL, an Individual,<br><br>      Defendant. | CASE NO. 2:16-cv-02625-GW (PLAx)<br><br>[*Assigned to the Hon. George H. Wu*]<br><br>**PLAINTIFF LUMA PICTURES, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

## TABLE OF CONTENTS

I.  **INTRODUCTION** ................................................................ 1

II. **LUMA'S CLAIM** ................................................................ 4

    A.  **Declaratory Relief.** ...................................................... 4

    B.  **Elements Required to Establish the Scripts are Works Made for Hire** ........................................................... 4

    C.  **Authorities and Key Evidence Supporting Each Element of Luma's Claim.** ............................................................. 5

        1.  **Defendant Jonathan Betuel was an employee of Luma.** ........ 5

            *a. Authorities* ...................................................... 5

            *b. Evidence.* ........................................................ 7

        2.  **While he was employed by Luma, Betuel wrote scripts and other literary works ("Scripts") that are copyrightable under The Copyright Act of 1976.** ................. 8

            *a. Authorities* ...................................................... 8

            *b. Evidence.* ...................................................... 10

        3.  **Writing the Scripts was the type of work Betuel was employed to do.** ................................................ 10

            *a. Authorities* .................................................... 10

            *b. Evidence.* ...................................................... 11

        4.  **Defendant wrote the Scripts within the authorized time and space of his employment.** .............................. 12

            *a. Authorities* .................................................... 12

            *b. Evidence.* ...................................................... 12

        5.  **Defendant wrote the Scripts within the authorized time and space of his employment.** .............................. 13

            *a. Authorities* .................................................... 13

     *b. Evidence.*................................................................. 14

    **6. Luma and Betuel never entered into a written agreement that Betuel would be the owner of the Scripts.** .................. 14

     *a. Authorities.*................................................................ 14

     *b. Evidence.*................................................................. 16

**III. <u>DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES</u>** ......................................................................... 16

**1. Failure to State a Claim** ............................................ 16

**2. Laches.** ....................................................................... 17

**3. Waiver.** ....................................................................... 17

**4. Unclean Hands.** ......................................................... 18

**5. Abandonment/forfeiture.** ......................................... 18

**6. Statute of Limitations.** ............................................. 19

**7. Failure to mitigate damages.** .................................. 19

**8. Non-ownership of copyright.** .................................. 19

**9. Lack of Consideration.** ............................................ 20

**10. Fraud** ........................................................................ 20

**11. Statute of Frauds.** ................................................... 20

**12. Payment.** .................................................................. 20

**13. Breach of Contract.** ................................................ 20

**IV. <u>ANTICIPATED EVIDENTIARY ISSUES</u>** .................... 21

**V. <u>ANTICIPATED ISSUES OF LAW</u>** ............................... 21

**VI. <u>BIFURCATION</u>** ............................................................. 21

**VII. <u>JURY TRIAL</u>** ............................................................. 21

  **A. <u>Issues Triable to the Court.</u>** ............................... 21

**VIII.** **ATTORNEYS' FEES** ................................................................... 21

**IX.** **ABANDONED ISSUES** ................................................................ 21

## TABLE OF AUTHORITIES

__CASES__

*578539 B.C., Ltd. v. Kortz*, Case No. CV 14-04375 MMM (MANx),
    2014 U.S. Dist. LEXIS 193685 (C.D. Cal. Oct. 16, 2014) ........................ 17

*Avtec Sys. v. Peiffer*, 21 F.3d 568 (4th Cir. 1994) ......................................... 12, 14

*Avtec Sys. v. Peiffer ("Avtec II")*, No. 94-2364,
    1995 U.S. App. LEXIS 25901 (4th Cir. Sep. 13, 1995) ............................ 14

*Aymes v. Bonelli*, 980 F.2d 857 (2d Cir. 1992) ......................................................... 7

*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*,
    718 F.Supp.2d 1167 (N.D. Cal. 2010) ......................................................... 17

*Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77 (2d Cir. 1995) ................................. 11

*City of Newark v. Beasley,* 883 F. Supp. 3 (D.N.J. 1995) ..................................... 11

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ........................... 5

*DC Comic v. Towle*, 802 F.3d 1012 (9th Cir. 2015) ............................................... 8

*Desilets v. Wal-Mart Stores, Inc.*, 171 F.3d 711 (1st Cir. 1999) ......................... 15

*Dickson, Carlson & Campillo v. Pole*, 83 Cal.App.4th 436 (2000) .................... 18

*Durham Indus. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) ............................... 9

*Entm't Research Grp. v. Genesis Creative Grp.*, 122 F.3d 1211 (9th Cir. 1997) .. 9

*Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F.Supp. 259 (E.D. Cal. 1987) ... 16

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) ..... 9

*Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42 (Cal. Ct. App. 2007) . 18

*Fleurimond v. N.Y. Univ.*, 876 F. Supp. 2d 190 (E.D.N.Y. 2012) ........................ 11

*Foraste v. Brown Univ.*, 248 F. Supp. 2d 71 (D.R.I. 2003) .................................. 15

*G & G Closed Circuit Events, LLC v. Nguyen*, Case No. 10-CV-00168-LHK,
    2010 U.S. Dist. LEXIS 104980 (N.D. Cal. 2010) ..................................... 17

*General Elec. Co. v. Superior Court*, 45 Cal.2d 897 (1955) ................................ 18

*Genzmer v. Pub. Health Tr.*, 219 F. Supp. 2d 1275 (S.D. Fla. 2002).................... 13

*Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28 (1961) ............................. 7

*Gomez v. Toledo*, 446 U.S. 635 (1980)................................................................. 16

*Harris v. Chipotle Mexican Grill, Inc.*, 303 F.R.D. 625 (E.D. Cal. 2014) ........... 17

*Hess v. Madera Honda Suzuki*, 1:10-cv-01821-AWI-BAM,
    2012 LEXIS 131584 (E.D. Cal. 2012) ......................................................... 7

*J & J Sports Products, Inc. v. Terry Trang Nguyen*, NO. C 11-05433 JW,
    2012 U.S. Dist. LEXIS 51641, (N.D. Cal. Mar. 22, 2012) ........................ 16

*JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010) ........................................ 6, 7

*Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970 (1999) .... 18

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of
Contemporary Dance, Inc.*, 380 F.3d 624 (2d Cir. 2004) .................................... 11

*Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs.*,
    119 F.3d 55, 63 (1st Cir. 1997)............................................................. 15, 16

*Sterpetti v. E-Brands Acquisition, LLC*, Civil Action No. 3:14CV693,
    2006 U.S. Dist. LEXIS 21407 (M.D. Fla. Apr. 20, 2006) ........................ 13

*United States v. Rivera*, 131 F.3d 222 (1st Cir. 1997)......................................... 15

*U.S. Auto Parts Network, Inc. v. Parts Geeks, LLC*,
    692 F.3d 1009 (9th Cir. 2012). ............................................................... 5, 9

**STATUTES**

17 U.S.C. § 101 ................................................................................................. 5, 6, 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17 U.S.C. § 102 ................................................................................ 8

17 U.S.C. § 106(2) ........................................................................... 9

17 U.S.C. § 201 ........................................................................ 14, 15

17 U.S.C. § 201(b) ................................................................. 5, 6, 15

17 U.S.C. § 204 ................................................................................ 9

**<u>OTHERS</u>**

Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.1 Preliminary Instruction – Copyright ............. 17, 19

Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.11 – Work Made for Hire by Employee .............. 5, 6

Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.15 ................................................................. 9

Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.3 ................................................................. 8

Consistent with its obligations under Local Rule 16-4, Plaintiff ReachLocal, Inc. ("ReachLocal") respectfully submits this Memorandum of Contentions of Fact and Law in connection with the trial scheduled to begin on November 22, 2016.[1]

## I.   **INTRODUCTION**

In 2002, Payam Shohadai and Jonathan Betuel co-founded Luma Pictures, Inc. ("Luma"). Mr. Shohadai contributed his experience producing visual effects, technology and the capital to startup the company. Mr. Betuel brought the intangibles; his experience and the contacts he made as a writer, producer and director of motion pictures in Hollywood. Mr. Betuel is best known for writing *The Last Starfighter*, a cult classic and one of the first movies to use computer generated technology. Mr. Betuel also promised to contribute capital as needed when Luma was formed (though he never did). In exchange for these contributions and promises, Mr. Shohadai received a majority share of the company (56.67%) and Betuel received (31.1/3%). Mr. Shohadai and Mr. Betuel both assumed the positions of employees, officers and directors of the corporation.

In the early years, the company was focused on creating the visual effects for movies produced by both large and independent studios in Hollywood. There were no formal, written employment duties for Mr. Shohadai or Mr. Betuel, but Mr. Shohadai agreed to focus his work on the supervision and production of the

---

[1] This memorandum, based on diligent inquiry and investigation, necessarily reflects only the current state of Luma's knowledge, understanding, and belief based on the information made available to it through the discovery process. Defendant has willfully and improperly withheld relevant information, including information Magistrate Judge Paul Abrams ordered Betuel to produce on December 20, 2016. As such, Luma reserves its right to modify, supplement, revise, or amend this memorandum and to correct any inadvertent errors or omissions contained in it.

visual effects, while Betuel was tasked with bringing in the content and facilitating the relationships with Luma's clients.  Both held the title of "Co-founder."  In addition, Mr. Shohadai held the titles of President, Chief Executive Officer and Visual Effects Supervisor; Mr. Betuel held the title of "Head of Sales."

From the outset Mr. Shohadai and Mr. Betuel had discussed their long-term goal to expand Luma's business to eventually produce visual effects for Luma's own original works.  These discussions became more frequent as Luma outgrew its start-up phase and became a highly respected provider of visual effects in approximately 2004.  As the model for its expansion, Luma used PIXAR Animation Studios, which evolved over time from a division of Lucasfilm called the Graphics Group to a full-service film studio that originates and produces films utilizing computer generated animation.  Luma's long-term goal became its mission statement, which was shared with Luma's employees at company meetings for the past 10 to 12 years.  In relevant part, Luma's Employee Handbook (dated 2012) states:

> While Luma has traditionally focused all VFX efforts exclusively on film, our intentions are to cultivate a presence in the commercial industry and also move towards becoming a producer of independent content.

As Co-founders, Mr. Shohadai and Mr. Betuel were superior employees with the flexibility to define their roles in Luma's expansion.  For his part, Mr. Betuel devoted substantial time and energy at Luma writing scripts, including, but not limited to, the following written works (collectively, the "Scripts"):

- *Greenwar*
- *The Conservationist*
- *Dead Dog*
- *Dreadful Hollow*
- Various sequels and spinoffs to *The Last Starfighter*, including: *The*

> *Next Starfighter, The Last Starfighter: Gunstar, Starfighters: The Legion of Law* and a Starfighter musical (collectively "*Starfighter*").

- *Dinosaur Wars*
- *Special Forces Olympics*
- *The Aladdin Curse*
- *Cheech & Chong: High Finance*
- *Scrabble*
- *Gizmo: The Junkyard Dog ("Gizmo")*
- *Whale Song*
- *Shark Tide*
- *Shaman*
- *War Toys*

In addition to writing the Scripts on company time, Mr. Betuel used Luma's resources to market the Scripts. He used Luma's offices to meet with various producers, directors, artists, actors, financier's and distributors. He also used Luma's email account to send various versions of the Scripts and communicate with his Industry Contacts on a weekly – often daily basis – during regular working hours. Betuel also expensed business meetings with his Industry Contacts regarding the Scripts, using his Luma credit card to pay for meals and drinks. Mr. Betuel repeatedly told Mr. Shohadai that, if and when any of the Scripts were picked up, Luma would be written into the contracts and would be guaranteed returns as a producer and provider of visual effects.

Mr. Shohadai was extremely busy meeting the demands of Luma's visual effects clients, but he also found the time to co-write a script entitled, *Indefinitely*. In 2012, Luma began pre-production on a feature film based on *Indefinitely*, but the project was based on hiatus when Luma landed several large visual effects jobs.

Neither Mr. Shohadai nor Mr. Betuel exercised any oversight over the

---

creative process of the other, but they updated each other regarding their progress and exchanged copies of the scripts they wrote.

Ultimately, Mr. Shohadai grew dissatisfied with the job Mr. Betuel was doing as Co-founder and Head of Sales.  Luma has worked on approximately 100 projects since it was formed, very few of which, were the result of Mr. Betuel's efforts.  In August 2015, Luma terminated Mr. Betuel's employment and requested the return of all company property, including the Scripts.  Mr. Betuel refused to return the Scripts, claiming he was the author and owner of the copyrights thereto.  Luma disagreed, contending it owns the Scripts because they are works made for hire.  This lawsuit for declaratory relief followed.

## II.   LUMA'S CLAIM

### A.   Declaratory Relief.

Luma seeks a declaration that it owns the copyrights to scripts and other literary works that were written by Jonathan Betuel during the period of his employment by Luma because they are works made for hire within the meaning of the Copyright Act of 1976.

### B.   Elements Required to Establish the Scripts are Work Made for Hire

1.   Defendant Jonathan Betuel was an employee of Luma.

2.   While he was employed by Luma, Betuel wrote scripts and other literary works ("Scripts") that are copyrightable under The Copyright Act of 1976.

3.   Writing the Scripts was the kind of work Betuel was employed to do.

4.   Betuel wrote the Scripts within the authorized time and space limits of his employment.

5.   Betuel wrote the Scripts, at least in part, for the purpose of serving Luma.

6.    Luma and Betuel did not agree in writing that Betuel would own the copyrights to the Scripts.

*See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.11 – Work Made for Hire by Employee; 17 U.S.C. §§ 101, 201(b); *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989); *U.S. Auto Parts Network, Inc. v. Parts Geeks, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012).

C.    **Authorities and Key Evidence Supporting Each Element of Luma's Claim.**

1.    **Defendant Jonathan Betuel was an employee of Luma.**

   a.  *Authorities.*

The following factors should be considered in determining whether the creator of a work was an employee:

1) The skills required to create the work.  The higher the skills required the more likely the creator was an independent contractor rather than an employee.

2) The source of tools or instruments used to create the work.  The more the creator had to use his own tools or instruments, the more likely the creator was an independent contractor rather than an employee.

3) The location of where the work was done.  The less the creator worked at the alleged employer's work site, the more likely the creator was an independent contractor rather than an employee.

4) Applicability of employee benefits, like a pension plan or insurance. The more the creator is covered by the benefit plans the alleged employer offers to other employees, the less likely the creator was an independent contractor rather than an employee.

5) Tax treatment of the creator.  If the alleged employer reported to tax authorities payments to the creator with no withholding or by use of a Form 1099, the more likely the creator was an independent contractor rather than an employee.

6) Whether the creator had discretion over when and how long to work. The more the creator can control his or her work times, the more likely the creator was an independent contractor rather than an employee.

7) Whether the alleged employer has the right to assign additional projects to the creator.  The more the creator could refuse to accept additional projects unless additional fees were paid, the more likely the creator was an independent contractor rather than an employee.

8) The method of payment.  The more the creator usually works on a commission or onetime-fee basis, the more likely the creator was an independent contractor rather than an employee.

9) Whether the creator hired (or could have hired) and paid his or her own assistants.  The more the creator hires and pays for his own assistants, the more likely the creator was an independent contractor rather than an employee.

10) Whether the alleged employee is a business.  If the party hiring is not a business, it is more likely that the creator is an independent contractor than an employee.

*See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.11 Copyright Interests -- Work Made for Hire by Employee, Supplemental Instruction – Employment Status; 17 U.S.C. §§ 101, 201(b); *See Reid*, 490 U.S. at 751-52; *JustMed, Inc. v. Byce*, 600 F.3d

1118, 1125-28 (9th Cir. 2010); *Aymes v. Bonelli*, 980 F.2d 857, 860-64 (2d Cir. 1992).

Because the Copyright Act does not define the terms "employee" or "scope of employment" the so-called *Reid* factors, listed above, were developed with reference to the general common law of agency. *Reid*, 490 U.S. 730, 752.

"No one of these factors is determinative." *Id*.; see also, *JustMed,* 600 F.3d at 1125-26 (citing *Aymes*, 980 F.2d at 861 (not all factors will have relevance in every case, "the factors should not merely be tallied but should be weighed according to their significance in the case.")).

Other relevant authority:  A person may be both a co-owner and shareholder of a closely held corporation and an employee.  *Hess v. Madera Honda Suzuki*, 2012 LEXIS 131584, at *12-15 (E.D. Cal. 2012); *Goldberg v. Whitaker House Co-op, Inc*., 366 U.S. 28, 32 (1961) ("There is nothing inherently inconsistent between the co-existence of a proprietary and employment relationship.").

### b. Evidence.

Luma will introduce the following categories of evidence that Defendant was an employee of Luma.

- Admissions and other testimony from Defendant Jonathan Betuel that he was employed by Luma, including Defendant Jonathan Betuel's counterclaim for breach of oral employment contract, which has since been withdrawn from this action.  In that counterclaim, Mr. Betuel alleged he entered into a contract for employment with Luma.

- Documents demonstrating Betuel was treated as an employee of Luma for tax purposes.

- Documents demonstrating Betuel received employee benefits from Luma.

- Documents and evidence demonstrating that Betuel received an annual salary.

- Documents and evidence that Luma assigned Betuel other projects than

1    sales.

2    • Documents and testimony demonstrating the duties Betuel performed on

3      behalf of Luma, including Luma's organization chart listing Betuel as a "Co-

4      founder," emails sent from Betuel's Luma email account that identified him

5      as a co-founder, Betuel's participation in decisions regarding Luma's

6      business other than sales, including Luma's employee benefit programs and

7      Luma's efforts raise capital from investors.

8    **2.    While he was employed by Luma, Betuel wrote scripts and other**

9         **literary works ("Scripts") that are copyrightable under The**

10        **Copyright Act of 1976.**

11            *a.    Authorities.*

12   Literary works, graphic works, dramatic works and motion pictures are

13   "copyrightable" under The Copyright Act of 1976.  *See* Manual of Model Civil

14   Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.3; 17

15   U.S.C. §102.  The Ninth Circuit has recognized that characters in comic books,

16   television or motion pictures can be afforded copyright protection when they

17   satisfy a three-part test.  *DC Comic v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015)

18   (Batmobile).  The Character (1) must generally have physical as well as conceptual

19   qualities; (2) must be sufficiently delineated to be recognizable as the same

20   character whenever it appears by displaying consistent, identifiable character traits

21   and attributes, although it need not have a consistent appearance; and (3) must be

22   especially distinctive and contain some unique elements of expression.  *Id.*

23   Other relevant authority:  The term derivative work refers to a work based

24   on one or more pre-existing works, such as a script, dramatization or motion

25   picture version.  If the copyright owner exercises the right to create a derivative

26   work based on the copyrighted work, this derivative work may also be

27   copyrighted.   Only what was newly created, such as editorial revisions,

28   annotations, elaborations, or other modifications to the pre-existing work are

considered to be the derivative work.  If the copyright owner allows others to create a derivative work based on the copyrighted work, the copyright owner of the pre-existing work retains a copyright in that derivative work with respect to all of the elements from the pre-existing work that were used in the derivative work.  *See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.15; 17 U.S.C. §§101, 106(2).

In order to be copyrightable, (1) "the original aspects of the derivative work must be more than trivial" and (2) "the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material." *Parts Geeks*, 692 F.3d at 1016-17 (citing *Entm't Research Grp. v. Genesis Creative Grp*., 122 F.3d 1211, 1220 (9th Cir. 1997) (quoting *Durham Indus. v. Tomy Corp*., 630 F.2d 905, 909 (2d Cir. 1980))).  The first prong of the *Durham* test asks whether the derivative work meets the "constitutional requirement" of originality enunciated in *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 346 (1991), which requires a minimal degree of originality.  *Parts Geek*, 692 F.3d at 1016-17.  The second prong ask whether the author "made so few changes to the preexisting work that issuing a copyright for the derivative work would prevent the owner of the preexisting work from exercising some of its rights under copyright law." *Id*. (citing *Entm't Research Grp*., 122 F.3d at 1220).

The leading treatise on copyright law states that "nonexclusive license may be granted orally, or may even be implied from conduct." 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A], at 10-36 (1989); 17 U.S.C.S. §204 (exempting non-exclusive licenses from the Act's requirement that transfers of copyright ownership must be made in writing); *Effects Assocs. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990).  In *Parts Geek*, the Ninth Circuit found that U.S. Auto Parts ("USAP") demonstrated a genuine issue of material fact regarding whether its employee, Thomason (who owned the copyright to software code for Manager

2000), created a derivative work made for hire when he wrote updates to Manager 2000 while he was employed by Partsbin and USAP. Id. at 1018-19. The Ninth Circuit further found that a jury could reasonably infer that Thomason provided Partsbin and USAP with an implied non-exclusive license to prepare derivative works from his software. *Id.* (noting that Thomason willingly modified and enhanced Manager 2000 and later versions of the software in response to his employer's request) (citing *Effects Assocs*, 908 F.2d at 558 (creator of special effects gave implied license for the footage to be used in movie).

    *b.*  *Evidence.*

  Luma will introduce the following categories of evidence that Defendant created the Scripts (which are copyrightable works) while he was employed by Luma.

- Admissions and other testimony from Defendant Jonathan Betuel that he wrote the Scripts during the period of his employment.
- Documents, including emails, demonstrating Betuel created and revised the Scripts during the period of his employment.
- The Scripts, including various versions written by Betuel during the period of his employment.
- Metadata for the Scripts, including the dates that various versions of the Scripts were created.

**3. Writing the Scripts was the type of work Betuel was employed to do.**

  *a. Authorities.*

  "Courts deciding whether an employee's project was the 'kind of work' the employee was hired to perform rely heavily on the employee's job description." *City of Newark v. Beasley,* 883 F. Supp. 3, 8 (D.N.J. 1995). Where the employee's responsibilities are not in writing, courts look "to the degree of control that an employer had over the employee's project when determining whether an employee's project was the kind of work he was hired to perform." *Fleurimond v.*

*N.Y. Univ.*, 876 F. Supp. 2d 190, 202 (E.D.N.Y. 2012).

However, the Restatement (Second) of Agency notes that there are many occupations in which the employer would not normally exercise control over the details of the employee's work.  The "control or right to control needed to establish the relation of master and servant may be very attenuated."  Restatement (Second) of Agency § 220(1) cmt. d (1958).  The Restatement offers the example of a "full-time cook" over whose culinary activity "it is understood that the employer will exercise no control."  *Id.*  The Restatement further notes that "ship captains and managers of great corporations are normally superior servants, differing only in the dignity and importance of their positions from those working under them." *Id.* §220(1) cmt. a.

The Supreme Court has also cautioned that "the extent of control the hiring party exercises over the details of the product is not dispositive" in determining whether a work was made "for hire."  *Reid*, 490 U.S. at 752; *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 86 (2d Cir. 1995) (although the plaintiffs had complete artistic freedom over sculptures they created other factors were given more weight and the sculptures were deemed works made for hire); *See also*, *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 642)) (2d Cir. 2004) (the fact that Graham was extremely talented explained why the Center of Contemporary Dance, Inc. declined to exercise control over the details of her work, but did not preclude the sort of employee relationship that results in a work for hire).

> b. *Evidence.*

- Admissions and other testimony from Defendant Jonathan Betuel that he was hired because of his experience as a writer, producer and director of motion pictures, including Betuel's prior pleadings.

- Testimony from Mr. Betuel and Mr. Shohadai regarding the duties Mr. Betuel performed on behalf of Luma as co-founder and as head of sales.

- Luma's organizational chart, which reflects that – although Mr. Shohadai had ultimate say with respect to Luma's business, Mr. Betuel did not report to any other persons.
- Testimony from Mr. Shohadai that he treated Mr. Betuel as a "partner" and "co-founder" seeking his agreement on major company decisions.
- Testimony from Mr. Shohadai and documents, including Luma's Employee Handbook, regarding Luma's long-term goal to expand into content origination.
- Documents reflecting Betuel's periodic reports to co-founder, Payam Shohadai, regarding his progress on the scripts and the expected benefit to Luma.

**4. Defendant wrote the Scripts within the authorized time and space of his employment.**

   *a. Authorities*

   "[W]here there is evidence that the employee's creation was the 'kind of work' the employee was employed to perform, courts have tended to put little weight on evidence that 'the work was done at home on off-hours.'" *Avtec Sys. v. Peiffer*, 21 F.3d 568, 571-72 (4th Cir. 1994).

   b. *Evidence*.

- Admissions and other testimony from Defendant Jonathan Betuel regarding his use of Luma's offices to write the Scripts and meet with his industry contacts to promote them, the use of his Luma email account to send drafts of the Scripts to his industry contacts for review and to promote them, and the use of his Luma credit card to entertain his industry connections in order to promote and develop the scripts.
- Testimony from Payam Shohadai regarding Betuel's use of Luma's offices to write the Scripts and meet with his industry contacts to promote them, the use of his Luma account to send drafts of the Scripts to his industry contacts

for review and to promote them, and the use of his Luma credit card to entertain his industry connections in order to promote and develop the scripts.

- Testimony of Rhea Espino to authenticate Luma's records regarding the charges Betuel made on his Luma credit card.
- Documentary evidence regarding Betuel's use of Luma's offices to write the Scripts and meet with his industry contacts to promote them, the use of his Luma account to send drafts of the Scripts to his industry contacts for review and to promote them, and the use of his Luma credit card to entertain his industry connections in order to promote and develop the scripts.

**5. Defendant wrote the Scripts, at least in part, to benefit Luma.**

> *a. Authorities.*

This element does not require that an employee's sole motivation have been to serve his employer, only that his motivation to do so have been part of his motivation in his work. *Sterpetti v. E-Brands Acquisition, LLC*, 2006 U.S. Dist. LEXIS 21407, at *26-27 (M.D. Fla. Apr. 20, 2006)(citing *Genzmer v. Pub. Health Tr.*, 219 F. Supp. 2d 1275, 1282 (S.D. Fla. 2002). An act falls within the scope of employment if the employee "was at least 'appreciably' motivated by a desire to further" the employer's corporate goals, and it falls beyond the scope of employment "if 'done with *no* intention' to serve" the master. *Avtec Sys. v. Peiffer ("Avtec II")*, 1995 U.S. App. LEXIS 25901, at *14-15 (4th Cir. Sep. 13, 1995) (*citing Avtec Sys. v. Peiffer* ("*Avtec I")*, 21 F.3d 568, 572 (4th Cir. 1994) (quoting Restatement (Second) of Agency §§ 235, 236 cmt. b)). *Black's Law Dictionary* specifically defines "appreciable" as meaning "perceptible but not a synonym of substantial." *Avtec II*, 1995 U.S. App. LEXIS 25901, at *14-15. To determine the employee's motivation, the court looks not at any alleged benefit the employer derived from the work, but instead considers the employee's state of mind as the

primary determination, and may also consider his actions or other manifestations as evidence of his state of mind. *Id*. (citation omitted).

An act "may be within the scope of employment, although done in part to serve the purposes of the [employee] or of a third person." Restatement (Second) of Agency § 236.

### b. Evidence.

- Admissions and other testimony from Jonathan Betuel regarding his intent to benefit Luma.

- Admisisons and other testimony from Payam Shohadai regarding discussions he had with Betuel regarding his intent that the Scripts would benefit Luma.

- Documentary evidence regarding Betuel's intent to benefit Luma, including emails to Mr. Shohadai and Vincent Cirelli regarding Luma's expected role as producer and provider of visual effects for any films made from the Scripts.

## 6. Luma and Betuel never entered into a written agreement that Betuel would be the owner of the Scripts.

### a. Authorities.

The legislative comments to Section 201(b) regarding the need for a written agreement, signed by both parties, are as follow:

Works made for hire. Section 201(b) of the bill adopts one of the basic principles of the present law: that in the case of works made for hire the employer is considered the author of the work, and is regarded as the initial owner of copyright unless there has been an agreement otherwise. The subsection also requires that any agreement under which the employee is to own rights be in writing and signed by the parties.

The work-made-for-hire provisions of this bill represent a carefully balanced compromise, and as such they do not incorporate the amendments proposed by screenwriters and composers for motion pictures. Their proposal was for the recognition of something similar to the "shop right" doctrine of patent law: with some exceptions, the employer would acquire the right to use the employee's work to the extent needed for purposes of his regular business, but the employee would retain all other rights as long as he or she refrained from the authorizing of competing uses. However, while this change might theoretically improve the bargaining position of screenwriters and others as a group, the practical benefits that individual authors would receive are highly conjectural. The presumption that initial ownership rights vest in the employer for hire is well established in American copyright law, and to exchange that for the uncertainties of the shop right doctrine would not only be of dubious value to employers and employees alike, but might also reopen a number of other issues.

17 U.S.C.S. §201 (legislative comments).

It is a bedrock principle that "when the [statutory] text's meaning is plain, courts are obligated to enforce the provision as written." *Desilets v. Wal-Mart Stores, Inc.*, 171 F.3d 711, 714 (1st Cir. 1999) (citing *United States v. Rivera*, 131 F.3d 222, 224 (1st Cir. 1997)).  The language of the work made for hire doctrine could not be clearer: it requires the parties to make an express agreement, memorialized "in a written instrument *signed by them*."  *Foraste v. Brown Univ.*, 248 F. Supp. 2d 71, 81 (D.R.I. 2003) (citing 17 U.S.C. § 201(b) (emphasis supplied)); *see also, Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs.*, 119 F.3d 55, 63 (1st Cir. 1997) (court emphasized and enforced the requirement of a written, as opposed to oral, agreement in order to circumvent the work made for hire doctrine).

b. *Evidence.*

- Admissions and other testimony from Jonathan Betuel.
- Admissions and other testimony from Payam Shohadai.

## III.   DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

Defendant's counterclaims have been dismissed.   Defense counsel has represented to Luma that they have abandoned their Affirmative Defenses Nos. 12-14.   The remaining affirmative defenses are (1) failure to state a claim, (2) laches, (3) estoppel, (4) waiver, (5) unclean hands, (6) abandonment/forfeiture, (7) statute of limitations, (8) failure to mitigate damages, (9) non-ownership of copyright, (10) lack of consideration, (11) fraud, (13) statute of frauds, (15) payment, (16) breach of contract.

### 1.  Failure to State a Claim

"Affirmative defenses plead matters extraneous to the plaintiff's *prima facie* case, which deny plaintiff's right to recover, even if the allegations of the complaint are true." *J & J Sports Products, Inc. v. Terry Trang Nguyen*, 2012 U.S. Dist. LEXIS 51641, *3-8 (N.D. Cal. Mar. 22, 2012) (citing *Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F.Supp. 259, 262 (E.D. Cal. 1987) (in turn citing *Gomez v. Toledo*, 446 U.S. 635, 640-41, (1980)).   In contrast, denials of allegations in the complaint or allegations that the plaintiff cannot prove the elements of his claims are not affirmative defenses. *See 578539 B.C., Ltd. v. Kortz*, 2014 U.S. Dist. LEXIS 193685, at *18-23 (C.D. Cal. Oct. 16, 2014).

Betuel's first affirmative defense must be stricken because failure to state a claim upon which relief can be granted addresses the elements of plaintiff's claims and is properly raised through denial of plaintiff's allegations or an appropriate motion. See *Kortz*, 2014 U.S. Dist. LEXIS 193685, at *18-23 (C.D. Cal. Oct. 16, 2014); *Harris v. Chipotle Mexican Grill, Inc.*, 303 F.R.D. 625, 628 (E.D. Cal.

2014); *see also G & G Closed Circuit Events, LLC v. Nguyen*, 2010 U.S. Dist. LEXIS 104980, *2-3 (N.D. Cal. 2010); *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1170-74 (N.D. Cal. 2010) ("Failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in Barnes' prima facie case").

### 2. Laches.

Betuel's Second affirmative defense should be stricken because Betuel failed to plead facts sufficient to put Luma on notice of the basis for the defense.   *See Wyshak v. City National Bank*, 607 F.2d 824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense"). Luma ownership rights vested upon creation of the Scripts. *See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.1 Preliminary Instruction – Copyright.  Luma was required to take no further action to perfect these rights.  When Betuel was terminated in August, 2015 he refused to return the Scripts to Luma, that was when the dispute regarding ownership of the Scripts first arose.

In response to this affirmative defense Luma will present evidence that it diligently pursued its claim once the dispute regarding ownership of the Scripts arose.

### 3. Waiver.

Betuel's Second affirmative defense should be stricken because Betuel failed to plead facts sufficient to put Luma on notice of the basis for the defense.   *See Wyshak*, 607 F.2d at 827.  *See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction 17.1 Preliminary Instruction – Copyright.  Luma was required to take no further action to perfect these rights. When Betuel was terminated in August, 2015 he refused to return the Scripts to Luma, that was when the dispute regarding ownership of the Scripts first arose.

In response to this affirmative defense Luma will present evidence that it diligently pursued its claim once the dispute regarding ownership of the Scripts arose.

**4. Unclean Hands.**

The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy. *Dickson, Carlson & Campillo v. Pole*, 83 Cal.App.4th 436, 446 (2000); *General Elec. Co. v. Superior Court*, 45 Cal.2d 897, 899-900 (1955). Unclean hands applies when it would be inequitable to provide the plaintiff any relief, and provides a complete defense to both legal and equitable causes of action. *Dickson, Carlson & Campillo*, 83 Cal.App.4th at 447; *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 978 (1999).

"Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." *Dickson, Carlson & Campillo*, 83 Cal.App.4th at 447; *Fladeboe v. Am. Isuzu Motors Inc*., 150 Cal. App. 4th 42, 56, (Cal. Ct. App. 2007). Further, "it is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc*., 890 F.2d 165, 173 (9th Cir. 1989).

In response to Defendant's affirmative defense Luma acted in good faith and equity with respect to the controversy at issue.

**5. Abandonment/forfeiture.**

Betuel's fifth affirmative defense should be stricken because Betuel failed to plead facts sufficient to put Luma on notice of the basis for the defense. *See Wyshak*, 607 F.2d at 827 ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense").

1  In response to this affirmative defense Luma will present evidence that it
2  diligently pursued its claim once the dispute regarding ownership of the Scripts
3  arose.

4  **6.  Statute of Limitations.**

5  Betuel's sixth affirmative defense should be stricken because Betuel failed
6  to plead facts sufficient to put Luma on notice of the basis for the defense.  *See*
7  *Wyshak*, 607 F.2d at 827 ("The key to determining the sufficiency of pleading an
8  affirmative defense is whether it gives plaintiff fair notice of the defense").  *See*
9  Manual of Model Civil Jury Instructions for the District Courts of the Ninth
10  Circuit, Instruction 17.1 Preliminary Instruction – Copyright.  Luma was required
11  to take no further action to perfect these rights.  When Betuel was terminated in
12  August, 2015 he refused to return the Scripts to Luma, that was when the dispute
13  regarding ownership of the Scripts first arose.

14  **7.  Failure to Mitigate Damages.**

15  The Complaint alleges one cause of action for declaratory relief.  Luma
16  seeks a declaration it owns the Scripts as "works made for hire."  Luma does not
17  seek any damages.  Accordingly, Betuel's Seventh affirmative defense is irrelevant
18  and fails allege sufficient facts to place Luma on notice of its claim.  *Wyshak*, 607
19  F.2d at 827 ("The key to determining the sufficiency of pleading an affirmative
20  defense is whether it gives plaintiff fair notice of the defense").

21  **8.  Non-ownership of Copyright.**

22  Betuel's Eighth affirmative defense is not a proper affirmative defense, as it
23  merely denies elements of Luma's affirmative claims.   As noted, a proper
24  affirmative defense does not assert that plaintiff cannot establish the factual
25  elements of its claims and show its entitlement to judgment as a matter of law
26  based on those facts, but that matters extraneous to plaintiff's *prima facie* case
27  preclude liability.  *Kortz*, 2014 U.S. Dist. LEXIS 193685, at *18-23 (C.D. Cal. Oct.
28  16, 2014).

**9.  Lack of Consideration.**

Betuel's Ninth affirmative defense is irrelevant because Luma is not bringing a cause of action for breach of contract.  Accordingly, Betuel fails allege sufficient facts to place Luma on notice of its defense.  *Wyshak*, 607 F.2d at 827 ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense").

**10. Fraud.**

Betuel's Tenth affirmative defense fails allege sufficient facts to place Luma on notice of its defense.  *Wyshak*, 607 F.2d at 827 ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense").  Allegations of fraud must be plead with particularity. *Lazar v. Superior Court,* 12 Cal.4th 631, 645 ("In California, fraud must be pled specifically; general and conclusory allegations do not suffice.") (1996).  Betuel pleads no facts, much less facts with particularity.

**11. Statute of Frauds.**

Betuel's Eleventh affirmative defense is irrelevant because Luma is not bringing a cause of action for breach of oral contract.  Accordingly, Betuel fails allege sufficient facts to place Luma on notice of its defense.  *Wyshak*, 607 F.2d at 827 ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense").

**12. Payment.**

Betuel's Thirteenth affirmative defense fails to allege any facts to place Luma on notice of its defense.  *Wyshak*, 607 F.2d at 827 ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense").

**13. Breach of Contract.**

Betuel's Eleventh affirmative defense is irrelevant because this action does not involve any claims for breach of contract. Accordingly, Betuel fails allege

sufficient facts to place Luma on notice of its defense. *Wyshak*, 607 F.2d at 827 ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense").

## IV.   ANTICIPATED EVIDENTIARY ISSUES

Based on the information known to Luma, it does not presently anticipate any evidentiary issues, although it may seek to exclude any evidence Defendant previously failed to disclose, where that disclosure was required by the Federal Rules of Civil Procedure, Local Rules or Magistrate Judge Abram's December 20, 2016 Order.

## V.   ANTICIPATED ISSUES OF LAW

Based on the information known to Luma, it does not presently anticipate any issues of law. Defendants have informed Luma that they also do not anticipate any issues of law.

## VI.   BIFURCATION

Luma does not believe the issues presented in this action warrant the bifurcation of any issues.

## VII.   JURY TRIAL

### A.   Issues Triable to the Court.

**Declaratory Relief Claim:** Plaintiff and Defendant have each waived their rights to have the claim tried by a jury. Fed. R. Civ. Proc. 12(a) and 38(d).

## VIII.   ATTORNEYS' FEES

Luma does not believe attorneys' fees are recoverable for any claims pleaded in this action.

## IX.   ABANDONED ISSUES

There are no abandoned issues.

Dated: March 27, 2017

Respectfully Submitted,
**BROWN NERI SMITH & KHAN, LLP**

By: /s/ Ethan J. Brown
    Ethan J. Brown

    *Attorneys for Plaintiff*
    Luma Pictures, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Ethan J. Brown, hereby declare under penalty of perjury as follows:

    I am a partner at the law firm of Brown Neri Smith & Khan, LLP, with offices at 11766 Wilshire Boulevard, Suite 1670, Los Angeles, California 90025. On the date below, I caused the foregoing **PLAINTIFF LUMA PICTURES, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on March 27, 2017.

/s/ Ethan J. Brown