Dariush G. Adli, SBN 204959
  adli@adlilaw.com
Drew H. Sherman, SBN 237045
  drew.sherman@adlilaw.com
ADLI LAW GROUP, P.C.
444 South Flower St., Suite 3100
Los Angeles, California 90071
Telephone:  (213) 623-6546
Facsimile:  (213) 623-6554

Attorneys for Plaintiffs Jonathan Betuel and Luma Pictures, Inc.

# DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUMA PICTURES, INC., a California corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>JONATHAN BETUEL, an individual,<br><br>           Defendants. | **Case No. cv 16-2625**<br>Honorable George H. Wu<br><br>**DEFENDANT'S POST-TENTATIVE RULING RESPONSE BRIEF**<br><br>**Hearing Date:** January 18, 2018<br>**Time:**           8:30 a.m.<br>**Dept.:**           9D |

DEFENDANT'S POST-TENTATIVE RULING RESPONSE BRIEF

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT IN OPPOSITION ................................................................... 2

   A. Script Writing Was Not the Job Betuel Was Employed To Do For Luma ........ 3

   B. Plaintiff's Evidence Does Not Indicate That Defendant Wrote The Scripts During Company Time Or On Company Property ..................................................... 5

   C. The Scripts Were Not Authored To Benefit Luma ............................................ 7

   D. Plaintiff's Arguments For This Court To Reconsider Ruling Are Meritless ..... 8

III. CONCLUSION ............................................................................................. 11

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

1920.202

2

DEFENDANTS' POST-TENTATIVE RULING RESPONSE BRIEF

# TABLE OF AUTHORITIES

**Cases**

*City of Newark v. Beasly*, 883 F. Supp. 3, 8 (D.N.J. 1995).............................................................. 3
*City of Newark*, 883 F. Supp at 8 ................................................................................................ 7
*Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989)............................................. 2

**Statutes**

17 U.S.C. §201(b) ............................................................................................................................2

**Other Authorities**

*Ninth Cir. Manual of Model Civil Jury Instructions* §17.11 .........................................................2

**Treatises**

Restatement (Second) of Agency § 236 ..........................................................................................7

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

# OPENING BRIEF

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD**, please take notice that Defendant, Jonathan Betuel, ("Betuel" or "Defendant") hereby submits his responsive brief to Plaintiff ("Luma" or "Plaintiff")'s Opposition to this Court's Tentative Ruling as follows:

## I. INTRODUCTION

This action went before this Court for a bench trial in the late April and early May of 2017, consisting of five (5) days of testimony, presentation of evidence, and motion practice, as well as one (1) day of closing arguments, by both parties.

Plaintiff called five (5) witnesses and entered tens of thousands of pages of documents into the record as part of its case in chief for a declaration by this Court that it was the owner, by virtue of a work for hire relationship, of approximately fifteen (15) scripts (the "Scripts") authored by Defendant. Defendant also presented its case in chief on his affirmative defenses, specifically statute of limitations and a release of claims by the Plaintiff. Defendant called three (3) witnesses and entered approximately one hundred (100) pages of documents as evidence into the record for his defense in chief.

Though this Court ruled that Defendant was an employee, after considering all the evidence, including the testimony and credibility of witnesses, this Court's tentative ruling on the facts and law presented at the trial (the "Ruling") also correctly found that creating original content was not a job duty Defendant was brought into Luma to perform.

At the hearing on the Ruling, Luma continued to argue that Betuel's job duties at Luma included creating original content by pointing to, as Plaintiff has declared, eight (8) "key pieces of evidence. But, as shown below, Plaintiff's argument for this Court to reconsider its Ruling consists of a litany of contradictions, misstatements of the record, arguments contrary to its trial positions, conclusory statements not supported by evidence, and red herrings intended to muddy the waters and mislead

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

1920.202

this Court. Indeed, Plaintiff's arguments for this Court to reconsider the Ruling is a thinly veiled alternative argument to their unsuccessful, first bite at the apple.

Nothing Plaintiff has presented in its brief on the Ruling negates this Court's factual findings, legal analysis, or conclusions. Plaintiff attempts to distract the Court's focus to evidence which is either not supported by the record, or otherwise has no relevance to the main issues in this case. When the smokescreen Luma tried to create clears, Luma still lacks even close to the quantity and quality of evidence it needs to prove its case by a preponderance of the evidence and the Court's Ruling is still correct and should be entered as its final judgment in this case.

## II. <u>ARGUMENT IN OPPOSITION</u>

The law of a work for hire is clear: In a work for hire relationship, the employer is considered the author and copyright owner of an original work of authorship in a tangible medium of expression created by an employee unless there is an expressed writing stating otherwise. 17 U.S.C. §201(b). A work for hire relationship is defined as one where the employee prepares the works of expression within the scope of his employment. *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989). A work is made within the scope of an employee's employment if: 1) it is the kind of work the employee is employed to create; 2) it occurs substantially within the authorized time and space limits; and 3) it is made for the purpose of serving the employer. *Ninth Cir. Manual of Model Civil Jury Instructions* §17.11. Since the three-element test outlined in the model instructions is conjunctive, ***the Plaintiff has the burden of proving all three elements***.

As discussed below, Luma fails to pass the first prong of the "within the scope" test and thus fails the entire test, as it needs to prove each of the three elements by a preponderance of the evidence. However, Defendant will also demonstrate how Luma fails the test of the other two factors it is required to prove to prevail in its "within the scope" claim.

**A. Script Writing Was Not the Job Betuel Was Employed To Do For Luma**

In its trial brief, Plaintiff cites to *City of Newark v. Beasly*, 883 F. Supp. 3, 8 (D.N.J. 1995) as the standard the Court must apply and the analysis it must employ to determine if Betuel's works at issue (the "Scripts") were within the scope of his employment at Luma. (See Dkt. No. 102 pg. 11:10-12). "As discussed infra, during the trial [Luma] completely failed to meet its burden of proof." *Id*. at 8.

First and foremost, in deciding whether a particular work was the "kind of work" the employee was hired to perform, courts will rely heavily on the employee's job description. *Id*. at 8. If the job description does not clarify the work an employee was hired to perform, then courts should look to the degree of control the employer exercised over the work's creation and whether the employee, in creating the works, "relied solely on knowledge gained within the scope of his employment." *Id*. at 8.

In *City of Newark*, a police officer working for the city of Newark created an educational program designed to deter juvenile car thefts. *Id.* The plaintiff city claimed ownership to the copyrights for the literary materials arguing that the defendant police officer created the program while he was an employee of plaintiffs' police department making the work one made for hire under the Copyright Act. *Id.* The defendant police officer argued that creating the educational program was not within the scope of his employment as a police officer. *Id.* The court held the defendant police officer was the author and owner of the copyrights to the educational program. *Id*. at 8-9. In so holding, the district court employed the three factors of job description, control over project, and basis of knowledge necessary to create the work as the test to determine whether the defendant police officer was engaged in the type of conduct for which he was employed when he created the educational program. *Id*. In "*City of Newark*,' as there was no specific job description for the defendant police officer, the court used the other two factors in making the "within the scope" determination. *Id*. The district court reasoned that, since the defendant's superiors had no idea what he was creating, and the defendant testified that his job as a police officer was not the source of his

3

knowledge for creating the work at issue, the works at issue were not the type of work the police officer was employed to do. *Id*.

Likewise, in the case at bar, Luma's own admissions in its pleadings mandates a finding that Betuel was not conducting the type of work he was employed to do when he created the Scripts. It is undisputed that Betuel did not have a job description as Plaintiff has admitted in its trial brief that "*[t]here were no formal, written employment duties for Mr. Shohadai or Mr. Betuel*, but Mr. Shohadai agreed to focus his work on the supervision and production of the visual effects, while … *Mr. Betuel would focus on bringing in[1] the content*" (see Dkt. No. 102 pg. 2:6-8 and 13-14). The Plaintiff also concedes that Luma did not exercise control over Betuel regarding the Scripts. As Plaintiff admitted in its pleadings and Shohadai testified on behalf of Luma, "neither Mr. Shohadai nor Mr. Betuel exercised any oversight over the other…" and Defendant had complete "creative control and authority" over the Scripts (see Dkt. No. 79 pg. 3:28 through pg. 4:1 and Dkt. No. 102 pg. 4:11-12; also see TT 4/26/17 a.m. pg. 54:7-22, pg. 55:5-18, pg. 77:11-18, pg. 98:21-25, and pg. 99:1-22). Regarding the third factor from *City of Newark*, beginning with his 2000 page first novel, Copywriters, published in 1972, Defendant had been creating and writing scripts for some *30 years when Luma was formed*. Even Plaintiff itself admits that his skills in writing scripts was established before Luma was formed since Plaintiff recognized Defendant as a well-established writer, director, and producer (See Dkt. No. 134 pg. 1:4-6).

Consequently, using the three factors outlined in the *City of Newark* case, case law which Plaintiff itself brought into the record for authority on scope of employment, the only conclusion that can be extracted from the stipulated facts and

---

[1] It is important to note that the language Plaintiff used in its trial brief is a clear indicator as to the type of work Betuel was employed to perform for Luma. He was tasked with "**bringing in**" content, *not creating content*.

Plaintiff's own admissions is that Betuel was not engaged by Luma to write the Scripts.

### B. Plaintiff's Evidence Does Not Indicate That Defendant Wrote The Scripts During Company Time Or On Company Property

In its Opposition to the Court's Tentative Ruling, Plaintiff argues that Defendant's use of Luma's resources to create the Scripts was "open and notorious" because he would constantly be using the conference rooms and a lot of printing would be done in front of his office. While Luma might have proven that Betuel had many pitch meetings at Luma, the evidence is not nearly enough to prove by a preponderance that Betuel *wrote* the Scripts during company time.

Luma argues that if writing was not part of Defendant's job he would have been ordered "to go back to work" (See Dkt. No. 156 pg. 9:21-22). This is a bald assertion without any support or foundation in the evidence. Shohadai testified that he was too busy to keep track of what Defendant was doing moment to moment, and, in fact, failed to exercise any oversight over the Defendant and Scripts (See TT 4/26/17 a.m. pg. 55:19-23; see also Dkt. No. 102 pg. 4:13-14).

What Luma believed to be its key evidence demonstrating Defendant writing the Scripts at work, the Scripts' metadata, proved to be a Trojan Horse. The metadata entered into the record by the Plaintiff confirmed that the original content was in fact created during non-working hours (See Ex. 12). Plaintiff failed to present any evidence to contradict this evidence (TT 4/26/17 a.m. pg. 53:17-22; TT 4/28/17 p.m. pgs 12:1-9, 45:7-25 through 48:1-5).

To the extent Plaintiff's Opposition seeks to mis-direct this Court to concluding that Betuel created original content on Luma's premises during company time, all the purported "evidence" is nothing but speculation, surmise and conjecture. For example, Luma cites to testimony of Vince Cirelli for the proposition that Defendant was writing the Scripts at work. However, Cirelli could not confirm the identity or even the subject matter of the purported screenplays, or even be sure that they were

even screenplays for feature films, as opposed to teleplays or theatrical plays (See TT 4/28/17 p.m. pg. 51:3-25 and 125:4-25). Cirelli's testimony on the amount of printing Defendant was doing is not credible or based on personal knowledge, since Cirelli also testified that that other workers at Luma would also print to that very same printer and he could not state whether the printing was from Betuel, another person at Luma, or what was even on the pages being printed (TT 4/28/17 p.m. pgs 12:1-9, 45:7-25 through 46:1-25). Cirelli testified that he would see Betuel typing something on a computer, but could not testify that he was typing the Scripts (TT 4/28/17 p.m. pg. 51:3-25 and 125:4-25).

According to Betuel's unrebutted testimony, he would send approximately 100 emails a week for Luma, not including any other work for Luma that needed to be done on the computer (TT 5/02/17 a.m. pg. 76:8-25 and 77:1-5). In fact, there was uncontradicted testimony presented at trial that Betuel's only spent 3-5% of his time doing any non-Luma related work, including issues relating to the Scripts. (TT 4/28/2017 a.m. pg. 43:10-20 and 4/28/2017 a.m. pg. 68:12-18 and 5/1/2017 pgs. 66:8-16, 93:14-19, 114:1-9 and 5/2/2017 pg. 77:12-25, 78:1-25, and 79:1-5).

Plaintiff argues that the Scripts were within the scope of Betuel's employment by relying on the second prong of *City of Newark* factors, i.e., that he performed the works at issue on company property during company time, by pointing to the number and time Betuel spent on meetings at Luma. Defendant testified without impeachment that the meetings he took with industry people at Luma were for Luma and any of his projects would only be used to just get the meeting to then pitch Luma's special effects services (See TT 4/28/2017 a.m. pg 43:10-20 and 4/28/2017 a.m. pg 68:12-18 and 5/1/2017 pgs 66:8-16, 93:14-19, 114:1-9 and 5/2/2017 pg 77:12-25, 78:1-25, and 79:1-5). However, even if every meeting Defendant took at Luma was for the Scripts, it would be of no consequence to the work for hire analysis, as ***pitching*** a project is not authoring original content. Authoring original content is the subject of a work for hire analysis, not pitching original content. Thus, this argument fails on its face.

6
DEFENDANTS' POST-TENTATIVE RULING RESPONSE BRIEF

Accordingly, even though the Court did not employ this structure in its "within the scope" analysis, even a cursory review of the evidence in the record and Plaintiff's required burden of proof leads to the inevitable conclusion that Plaintiff did not prove by a preponderance of the evidence that Betuel authored the Scripts at issue during business hours or on company property.

**C. The Scripts Were Not Authored To Benefit Luma**

At the formation of Luma in 2002, Betuel had already been writing novels and scrips for some 30 years. He testified at length that his goal for the scripts did not relate to his work at Luma, which was special effects, except that Luma would get first shot at the VFX for any of the Scripts which were picked up for production. Betuel's mind-set in authoring the Scripts was not created or guided by whether Luma would benefit.

According to its litigation induced position, Plaintiff now argues that the third prong of the *City of Newark's* "within the scope" factors is satisfied since Defendant had some, *albeit* indirect, intent for the Scripts to benefit Luma. To meet this prong, Luma "was required to prove at trial that [Betuel] was at least "appreciably" motivated by a desire to further the goals of [Luma] in order to satisfy the third element of the work-for-hire test. *Id*. (quoting Restatement (Second) of Agency § 236 cmt. b)." *City of Newark*, 883 F. Supp at 8.

Here, it is not disputed that Betuel did not create the works at issue with the intent to benefit Luma. To illustrate the nuance, a comparison with the ruling in *City of Newark,* which found that the defendant police officer did not create the educational program for the city of Newark's benefit because the defendant police officer testified that he had hoped the program would have gone to many cities for use, is warranted. *Id*. at 8. Similarly, here, Defendant could not have authored the Scripts with Plaintiff's benefit in mind because, like in *City of Newark*, he could not predict how the Scripts would be produced, including the VFX, or who would produce the Scripts.

7

Hence, based on the evidence presented at trial, Luma fails to meet this prong of the "within the scope" test.

Accordingly, Plaintiff failed to meet its burden of establishing that the works at issue were the type of work Betuel was engaged to perform, that the Scripts were authored utilizing Luma's time and resources; or that Betuel created the works with an appreciable motivation to benefit Luma. Indeed, the Scripts were not within the scope of Betuel's employment.

### D. Plaintiff's Arguments For This Court To Reconsider The Ruling Are Meritless

Plaintiff's Opposition to the Court's Tentative Ruling conveniently fails to cite to the evidence relied on by this Court in reaching its Ruling, nor can the Plaintiff present any credible, consistent evidence to negate or refute the conclusions in the Ruling. As stated, all Plaintiff is left with are contradictions, misstatements, and non-sequiturs.

First, Plaintiff argues that discussions between Defendant and Plaintiff's other principal, Payam Shohadai ("Shohadai"), evidences that writing was in the scope of Defendant's employment. However, that "evidence", such as it is, does not come even close to establishing by a preponderance of the evidence, that the writings at issue were within the scope of employment.

In fact, the Plaintiff's argument supports Defendant's affirmative defenses for a release of claims and statute of limitations since Plaintiff indicates that the Scripts were always part of Defendant's obligation for any benefit received from Luma (See Dkt. No. 156 pg. 6:4-23). If so, then the Release from the 2010 Contract definitely precludes the Plaintiff's claim as Plaintiff argues in its Brief that the 2010 Contract was about a dispute of Betuel's contribution and the consideration Luma provided for the intended contributions to Luma (See Dkt. No. 156 pg. 7:1-10).

Second, Plaintiff argues that the long-term "dream" of content production, the litigation induced testimony of Shohadai, and "the course of conduct" of the parties

supports writing original content being in the Defendant's scope of employment because Plaintiff allowed Defendant to write and negotiate deals for the Scripts as part of the "dream" of content production. This is laughable as the Plaintiff's contention at trial was the exact opposite, Plaintiff does not cite to any testimony of the like, and the legal position of course of conduct is without support.

Shohadai testified that he partnered up with Betuel to establish Luma because Shoahdai thought that Betuel had the contacts and connections to Hollywood that Luma needed (TT 4/26/17 a.m. pg. 28:15-17). According to Shohadi, "for all I knew, Betuel was brining in the work at Boy Wonder." *Id*. Further, Shohadai also admitted that he knew Betuel did sales at Boy Wonder (TT 04/26/2017 AM pg. 17:17-18:7; TT 04/26/2017 a.m. pg. 27:21-28:3). More importantly, Luma responded to discovery that Betuel was terminated because he was not making any sales (TT 4/26/17 a.m. pg. 95:1-9). His lack of writing the Scripts were not the reason for termination.

As well, Plaintiff does not state what course of conduct demonstrates scope of employment. As provided in the previous paragraph, the only course of conduct between Shohadai and Betuel was in Boy Wonder where Shohadai knew Betuel to do sales.

Third, Plaintiff argues that as a "co-founder" of Luma, writing original scripts was in the scope of employment. Once again, Plaintiff's blatant about face to its trial position are astounding. Moreover, Plaintiff asserts this conclusion without evidence and a leap in logic since a founder stating that he would do whatever it took to help the company does not, in and of itself, place script writing in the scope of his employment at the company. A contribution of service or money does not effectuate a change to a job description or duties.

Fourth, Plaintiff argues that Betuel's "open and notorious" use of Luma's resources, along with Shohadai's refrain from telling Defendant "to get back to work." indicates writing was within Defendant's scope of employment. Again, contradictions and misstatements of the record are obvious on this point for Plaintiff

9

as "open and notorious" and not ordering the Defendant to "punch the clock" flies in the face and discredits the Plaintiff's earlier arguments in its brief on the Ruling whereby Plaintiff recognizes Betuel as a founder and principal of Luma. As a co-founder and "owner" of Luma, his use of the facilities would not be in question no matter what the purpose. A business owner's use of company property is never notorious, as it is the owner's property to use. As discussed above, Shohadai could not tell Betuel to get back to work as Shohadai did not supervise Betuel. Moreover, also as discussed above, this argument fails to realize the difference between the work of an artist and the work of a sales rep.

Arguments supporting evidentiary points five through eight of Plaintiff's brief on the Ruling (Luma would benefit from the Scripts, Employees believed Defendant to be employed to write scripts, Defendant's industry contacts though Luma would benefit, and a request for an adverse inference ruling) do absolutely nothing to prove by a preponderance of the evidence that writing original Scripts were "within the scope" of Betuel's employment. Besides non-sequiturs and red herrings, the only facts that can be gleaned from evidentiary points 5 through 8 of Plaintiff's Brief on the Ruling are that Defendant was going to try his hardest to get Plaintiff the VFX contracts on the Scripts and Plaintiff is attempting to a make post-trial, retro-active motion *in limine* which it had already made before trial.

Further, Luma's rebuttals to this Court's reliance on two critical pieces of evidence are circular and fail to dent the proper analysis applied and the correct conclusions reached by this Court from them. For example, Plaintiff seems to argue that the *Indefinitely* copyright registration does not lead to the conclusion that Defendant was the owner of the Scripts, as Shohadai and Cirelli were the owners of *Indefinitely* and not Luma, because Luma was going to receive some monetary benefit that did not require owning the copyright. To start, Plaintiff's argument is conjecture, void of evidentiary support, and is a new argument first presented at this stage of the litigation. Next, the logic is erroneous. If Luma owned the copyright, it could earn

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

even more money through a licensing fee as well as a "waterfall" monetary benefit as producer. Plaintiff's argument borders on ridiculous.

With regard to the Lightening Presentation, Plaintiff posits that it was logical to place the mention of Scripts in the expected revenues portion of the document since it was not going to be the lead producer on the films from the Scripts. That is why, as Plaintiff argues, the language in the Lightening Presentation should not be considered by this Court to indicate Luma's belief in ownership of the Scripts. Again, the logic is unfounded and lacking in evidentiary support. Even if Luma was not going to finance the Scripts and a third-party would be necessary, Luma would still generate a licensing fee for the use of the Scripts. Alternatively, or, inm addition to, Luma could mandate itself as the VFX producer, as well as earn revenues as any named producer. Moreover, the Scripts would still be an asset that any logically thinking business owner would list if looking for investors, especially the Starfighter scripts as those had a proven track record.

Plaintiff's arguments to influence this Court to reconsider its Ruling does not help Plaintiff's cause as the arguments Plaintiff makes illuminates the unreasonableness of this litigation from the beginning. Plaintiff's arguments in this briefing opens the curtain even more to the conclusion that this action was not brought legitimately to resolve a dispute of competing claims to copyrights. Plaintiff's briefing, rather, evidences Plaintiff's true motive in bringing this action: to drain Betuel's resources and force him into a surrender of his shares at a markedly discounted amount. Such impetus for bringing this action necessitates sanctions from this Court, *sua sponte*, or an award to Defendant of full attorney's fees.

### III.   CONCLUSION

The evidence of record is far from sufficient to provide Luma's position. It is clear that Betuel was not hired to write the scripts at issue and the Scripts were not authored as a duty within the scope of his employment. Rather, the evidence clearly indicates that this action was bogus from the start, a tool of harassment, and was

unreasonably brought.  This Court's Tentative Ruling should be confirmed as the judgment of the Court.

ADLI LAW GROUP, P.C.

Dated: January 11, 2017          By: */s/Drew H. Sherman*
                                 Dariush G. Adli, Esq.
                                 Drew H. Sherman, Esq.
                                 A. Tyler Mellos, Esq.
                                 *Attorneys for Plaintiff*

# PROOF OF SERVICE

I am over eighteen (18) years of age, employed in the County of Los Angeles, and not a party to this action. My business address is 444 South Flower Street, Suite 3100, Los Angeles, California 90071. I hereby certify that on March 17, 2017, I served the following documents:

**DEFENDANT'S POST-TENTATIVE RULING RESPONSE BRIEF**

By delivering the document(s) to:

> Ethan J. Brown, Esq.
> *ethan@bnsklaw.com*
> Jill R. Glennon, Esq.
> *jill@bnsklaw.com*
> **BROWN NERI SMITH & KHAN LLP**
> 11766 Wilshire Boulevard, Suite 1670
> Los Angeles, California 90025

☑ BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☑ BY MAIL: I am readily familiar with this firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at a Postal Service collection box at Los Angeles, California, in the ordinary course of business. The envelope was sealed and placed for collection that same day following ordinary business practices, addressed to the above-referenced attorney.

I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed January 11, 2017, at Los Angeles, California.

/s/ Drew H. Sherman
*Drew H. Sherman*